# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SHERON K. SMITH,

    Plaintiff,

v.                                Case No. 8:08-cv-450-T-30TBM

THE FAMILY ENRICHMENT
CENTER, INC.,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment and Memorandum of Law (Dkt. 16), Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment (Dkt. 17), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Dkt. 26) and Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. 27). The Court, having considered the motion, response, memoranda, affidavits, exhibits, depositions, and being otherwise advised in the premises, finds that Defendant's Motion for Summary Judgment and Memorandum of Law (Dkt. 16) should be granted.

## BACKGROUND

Plaintiff Sheron K. Smith's ("Plaintiff") complaint against Defendant The Family Enrichment Center ("FEC") alleges that she was subjected to discrimination based on sex and

sexual harassment as a result of her supervisor, Jeffrey Smith's ("Mr. Smith") actions of treating her badly, using sexually explicit language and acting inappropriately.

Plaintiff was employed in the position of Transporter at FEC from April 2006 through March 2007.[1] FEC is a faith-based, not-for-profit child-placing agency. Plaintiff's duties as a Transporter were to transport children from foster care homes to different locations of placement. Plaintiff would transport the children to other agencies, such as East Care Center, West Care Center, North Care Center, Everyday Blessings, Camelot, HKI, Hillsborough Kids and other foster homes. One hundred percent of Plaintiff's job consisted of transporting the children. While Plaintiff transported the children, she would be away from FEC. Mr. Smith did not accompany Plaintiff while she performed her duty of transporting the children to different areas of placement and Mr. Smith was not present at the areas of placement.

Mr. Smith was Plaintiff's supervisor. Mr. Smith also hired Plaintiff for her position and conducted Plaintiff's interview. Plaintiff reported to Mr. Smith and Lisa Hale ("Ms. Hale"). Ms. Hale was also a Transporter, but, according to Plaintiff "she pretty much did [Mr. Smith's] job." (Plaintiff's deposition at 59:18-21). Plaintiff reported to Ms. Hale more than Mr. Smith because Mr. Smith did not work during Plaintiff's shift hours. Accordingly,

---

[1] The record is unclear as to Plaintiff's exact dates of employment. Plaintiff could not remember the start date of her employment. She applied for the position of Transporter on April 1, 2006 and stated in her first Charge of Discrimination that she was employed since April 21, 2006. (Plaintiff's deposition, Exhibits 1 and 4 attached thereto). Similarly, Plaintiff could not remember her last day of employment at FEC. She stated during her deposition that it was sometime around January 1, 2007, however a document that FEC submitted to the Equal Employment Opportunity Commission ("EEOC") indicates that Ms. Smith's employment ended on March 10, 2007. (Deposition of Ms. Williams taken on November 5, 2008, Exhibit 7 attached thereto).

when Plaintiff had job-related questions, she would first discuss them with Ms. Hale. However, when Plaintiff needed to request leave, she would go to Mr. Smith. Mr. Smith also completed Plaintiff's performance evaluations. Mr. Smith's supervisor was Katrina West ("Ms. West").

According to Plaintiff, Mr. Smith sexually harassed her four times during her employment at FEC. The first incident occurred on July 14, 2006. Plaintiff claims that on July 14, 2006, Mr. Smith grabbed her breast while they were standing in the front part of the office. Ms. Hale was also present when Mr. Smith grabbed her breast. Plaintiff could not remember how long Mr. Smith held her breast, stating that it could have been a split second, but she was not sure. (Plaintiff's deposition at 65:20-23). She did remember that it was not a long period of time. (Plaintiff's deposition at 66:1). In response to Mr. Smith grabbing her breast, Plaintiff brushed his hand off and asked him if he was out of his mind. During Plaintiff's deposition, she could not recall whether Mr. Smith said anything in response. Plaintiff also stated that Ms. Hale witnessed what happened.

The second incident also occurred on July 14, 2006. According to Plaintiff, she went into the office to complete some paperwork. Mr. Smith came in behind her, shut the door and locked it. Nobody else was present in the office. Plaintiff stated that after Mr. Smith locked the door, he came over behind the desk where she was, put his arms around her and grabbed her tightly. Plaintiff stated that Mr. Smith told her he was "going to take it" and she told him to let her go. (Plaintiff's deposition at 68:9-13). When Mr. Smith would not let her

go she yelled "rape." (See id.) Mr. Smith then let her go and said "it didn't have to be that way." (See id).

During her deposition, Plaintiff stated that also on July 14, 2006 she joked around with Mr. Smith, telling him that he needed to put on a bra. According to Plaintiff, they were in the office and Mr. Smith "was bouncing around like he was boxing or whatever" and she told him that he needed to put on a bra. (Plaintiff's deposition at 100:14-25; 101; 102:1-4). Plaintiff stated that she was not angry with Mr. Smith when she made the statement. She also stated that she could not remember if she made the joke before or after he grabbed her breast.[2] Ms. Hale was also present during this time.

On July 14, 2006, Plaintiff also requested leave from Mr. Smith. Specifically, according to the Employee Request for Leave form, Plaintiff requested leave from August 14, 2006 through September 25, 2006 because she was "having surgery." (Affidavit of Michelle Walker, Exhibits 1 and 2 thereto). Mr. Smith approved the form. (See id.).

The third incident occurred on July 19, 2006. According to Plaintiff, Mr. Smith asked her to step out of her van and proceeded to ask her vulgar questions of a sexual nature. For example, Plaintiff stated that Mr. Smith asked her "if [her] nipples were hard" and "do my pussy still get wet." (Plaintiff's deposition at 70:15-22). Plaintiff stated that there were other coworkers present when Mr. Smith made this statement. Plaintiff also stated that in response

---

[2] Although, later in her deposition, Plaintiff did state that when she told Mr. Smith to put on a bra it was in reference to him grabbing her breast. (Plaintiff's deposition at 124:3-6).

to Mr. Smith's statement, she told him to "get a life" and to leave her alone. (Plaintiff's deposition at 72:3-4).

Two days after the July 19 incident, Plaintiff stated that she jokingly asked Mr. Smith if she could get a raise for changing "shitty diapers." (Plaintiff's deposition at 76:13-16). Plaintiff stated that she was "just joking" when she requested the raise because she knew she could not get a raise for changing "shitty diapers." (See id. at 76:10, 18-19).

The fourth incident occurred on August 7, 2006. According to Plaintiff, Mr. Smith called the on-call phone and spoke with another employee and then asked to speak to Plaintiff. (Plaintiff's deposition, Exhibit 4 thereto). Plaintiff then put the phone on speaker and asked Mr. Smith what he wanted and Mr. Smith replied "what I want you won't give it to me." (See id.). Plaintiff then told Mr. Smith "he didn't want [her] he wanted peter (dick) and he stated why was [she] calling him out like that." (See id.).

According to Plaintiff's Charge of Discrimination, Mr. Smith always made sexual gestures at her from the beginning of her employment at FEC. (Plaintiff's deposition, Exhibit 4 thereto). During Plaintiff's deposition, she could not remember any other incidents involving these gestures. Plaintiff did remember that they did not involve Mr. Smith touching Plaintiff. (Plaintiff's deposition at 86:3-8).

According to Plaintiff's Charge of Discrimination, Plaintiff reported the four incidents described herein to FEC's Human Resources Department on August 18, 2006. (Plaintiff's deposition, Exhibit 4 thereto). During Plaintiff's deposition, however, she stated that she

verbally reported the incidents to Human Resources, specifically Michelle Walker and LaTonia ("Toni") Boyd at the time they occurred or soon thereafter.[3]

Upon receiving Plaintiff's written complaint on August 18, 2006,[4] FEC conducted an investigation. Specifically, Plaintiff was interviewed on August 18, 2006 regarding her complaint. On August 21, 2006, Mr. Smith was interviewed. On August 25, 2006, Ms. Hale was interviewed. On August 30, 2006, Mr. Smith was requested to respond in writing to Ms. Smith's complaint of sexual harassment by September 1, 2006.[5] On September 1, 2006, Mr. Smith submitted his written response. On September 12, 2006, FEC's Executive Director, Olga Williams ("Ms. Williams"), sent a letter to Plaintiff stating that the investigation was concluded and that "[t]he evidence shows that you and Mr. Smith were engaged in conversations and behavior inappropriate for the workplace." (Plaintiff's deposition, Exhibit 6 thereto). The letter also stated that Mr. Smith would receive disciplinary action. Mr. Smith

---

[3] The parties dispute this point. According to the affidavits of Ms. West, LaTonia Boyd and Michelle Walker, Plaintiff did not file a written report regarding the incidents until August 18, 2006. The affidavit of Michelle Walker states that prior to August 18, 2006, Plaintiff came to her on one occasion and told her that Mr. Smith used foul language and that she was tired of his comments. Ms. Walker's affidavit states that at no time prior to August 18, 2006 did Plaintiff ever state that she was being sexually harassed by Mr. Smith or report the incidents that Plaintiff states occurred on July 14, 2006, July 19, 2006 and August 7, 2006. The affidavits of Ms. West and LaTonia Boyd also state that they did not receive any verbal complaints from Plaintiff regarding Mr. Smith prior to August 18, 2006.

[4] Plaintiff was on medical leave at the time that she filed the written complaint.

[5] Mr. Smith was also requested to respond to a complaint made by another employee, Sonya Brooks. According to Ms. Brooks' complaint, Mr. Smith made several sexual comments to her since the start of her employment. (Affidavit of LaTonia Boyd).

received sexual harassment training. Mr. Smith was suspended for five days without pay, starting on September 25, 2006. Plaintiff did not receive any form of disciplinary action.

On September 25, 2006, Plaintiff returned to work from medical leave in her previous position and at her normal schedule. On October 30, 2006, a Memorandum was issued from Ms. Williams to the On Call Staff stating that the Board of Directors made the decision to terminate FEC's contract with Hillsborough Kids, Inc. for the provision of on-call services. (Plaintiff's deposition, Exhibit 9 thereto). The program's end date was projected to be January 8, 2007. The Memorandum also noted that as a result of the program's termination a reduction in force would occur. Plaintiff's employment was subsequently terminated.

## **DISCUSSION**

### I.     **Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Legal Analysis

### A. <u>Sexual Harassment Claim</u>[6]

Title VII's prohibition of gender discrimination includes protection against sexual harassment. <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993). To establish a *prima facie* case of sexual harassment based on a hostile work environment, a plaintiff must show that (1) she belongs to a protected group, (2) that she was subject to unwelcome sexual harassment, (3) that the harassment complained of was based on sex, (4) that the harassment affected a term, condition or privilege of the employment and that it was "sufficiently severe or pervasive to alter conditions of her employment," and (5) that the employer knew or should have known of harassment and failed to take prompt remedial action.[7] <u>Mendoza v. Borden, Inc.</u>, 195 F. 3d 1238, 1245 (11th Cir. 1999). Defendant contends that Plaintiff

---

[6] The record is clear that Plaintiff is not asserting a claim of quid pro quo harassment or a claim that similarly-situated males were treated more favorably. Plaintiff stated throughout her deposition that she was not discriminated against with regard to her sex on the basis of any term and condition of employment. The record also does not reflect any facts suggesting that similarly-situated males were treated more favorably with regard to any condition of Plaintiff's employment. (Plaintiff's deposition at 54:20-25; 57:12-17; 125:2-13).

[7] With respect to the fifth element, widely known as the *Faragher-Ellerth* affirmative defense, the Court agrees with the dissenting opinion in <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 766-774 (1998) that Defendant should not be liable for Mr. Smith's conduct if it took appropriate remedial action (as it did in this case) to address Plaintiff's complaints of sexual harassment. The purpose of the *Faragher-Ellerth* affirmative defense is to limit an employer's liability for the actions of a supervisor by encouraging employers to provide a mechanism for the reporting and resolution of complaints about incidents of harassment. This purpose, however, is belied when an employee promptly avails herself of the harassment policy, the employer appropriately resolves the situation and the employee still opts to file a claim against the employer for the supervisor's harassment. In such a case, under the opinion of the majority, the employer is still liable for the supervisor's actions, despite the fact that it promptly and appropriately addressed and resolved the complaints of harassment. But, the Court has not applied the minority position in this case.

cannot prove the second, fourth and fifth elements. The Court will focus its attention on the fourth element, i.e., whether the harassment was "sufficiently severe or pervasive."

In <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57 (1986), the Supreme Court stated that sexual harassment, to be actionable under Title VII "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." In determining whether sexual harassment is sufficiently severe or pervasive to alter an employee's terms and conditions of employment, courts require both a subjective and objective component, defining the objective component as that which a "reasonable person would find hostile or abusive." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22 (1993). In <u>Harris</u>, the Supreme Court provided factors to assess whether a work environment should be rendered hostile or abusive, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a "mere offensive uttering"; (4) whether it "unreasonably interferes" with an employee's work performance; and (5) the effect on the employee's psychological well-being. <u>Id.</u> at 23. Subsequently, the Supreme Court, in reviewing its holdings with respect to the elements of severe or pervasive in a hostile work environment sexual harassment claim, held that

> [a] recurring point in these opinions is that 'simple teasing,' offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the 'terms and conditions of employment.' These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' Properly applied, they will filter out complaints attacking the ordinary tribulations of the work place such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.

<u>Faragher v. City of Boca Raton</u>, 118 S. Court. 2275, 2283-284 (1998) (citations omitted).

In <u>Mendoza v. Borden, Inc.</u>, 195 F. 3d 1238 (11th Cir. 1999), *cert. denied* 120 S. Court. 1674 (2000), the Eleventh Circuit found that the complained-of conduct failed to rise to an actionable level, in part because the acts of the harasser, including "accidentally" rubbing his hip against the plaintiff, were not "threatening or humiliating." In <u>Gupta v. Florida Bd. of Regents,</u> 212 F.3d 571 (11th Cir. 2000), the Eleventh Circuit similarly found that harassing comments, and the alleged harasser putting his hand on plaintiff's thigh, touching her bracelet, and lifting the hem of her dress, although inappropriate, were not so severe and pervasive as to constitute actionable sexual harassment. In <u>Mitchell v. Pope</u>, 189 Fed. Appx. 911 (11th Cir. 2006), the Eleventh Circuit affirmed summary judgment in favor of the employer, finding that sixteen incidents of offensive conduct including the supervisor's attempts on three occasions to touch the employee and kiss her and numerous incidents of the supervisor making sexual and offensive remarks to the employee did not constitute the type of "severe" harassment necessary for liability to attach under Title VII. Similarly, in <u>Madden v. GTE Florida, Inc.</u>, 33 F. Supp. 2d 1027 (M.D. Fla. 1999), the plaintiff alleged that the harasser made several harassing comments to her, was argumentative and hostile, put his hand on plaintiff's face and subjected her work to greater scrutiny than other associates. The court granted summary judgment finding that the plaintiff was not subjected to a severe or pervasive hostile work environment that unreasonably affected a condition of her employment. <u>Id.</u>

As a result of these cases and the standard for actionable sexual harassment in the Eleventh Circuit, Plaintiff's claims of sexual harassment based on a hostile work

environment fail as a matter of law. The incidents of sexual harassment described in the record were clearly not so severe or pervasive as to constitute actionable sexual harassment. The record reflects that on the same day that Mr. Smith grabbed Plaintiff's breast,[8] Plaintiff jokingly told Mr. Smith that he needed to wear a bra. Also on that same day, Plaintiff requested leave from Mr. Smith, which he approved. The record also reflects that Plaintiff joked around with Mr. Smith on other occasions, asking him for a raise for changing "shitty diapers" and telling him that he liked "peter." These facts indicate that Plaintiff was still able to interact with Mr. Smith and perform her job. Moreover, Mr. Smith was not present when Plaintiff transported the children to different agencies, which in her words was about 100% of her responsibility at FEC. The record also reflects that Plaintiff returned to work after her medical leave and did not assert further complaints of sexual harassment against Mr. Smith. Based on the totality of the circumstances, the incidents of sexual harassment, although inappropriate, did not unreasonably interfere with Plaintiff's job performance or have a severe impact on Plaintiff's psychological well-being.

Accordingly, no material fact exists as to whether the alleged harassment was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment and Defendant is entitled to summary judgment as a matter of law on Plaintiff's claims of sexual harassment based on a hostile work environment.

---

[8] In <u>Mendoza</u>, the Eleventh Circuit describes numerous cases where the court granted summary judgment in favor of the employer on the employee's claim of sexual harassment based on a hostile work environment that involved incidents of touching more egregious than Mr. Smith's act of grabbing Plaintiff's breast. 195 F.3d at 1246-1253.

B. <u>**Retaliation Claims**</u>

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal link between her protected activity and that adverse employment action. See <u>Little v. United Technologies</u>, 103 F.3d 956, 959 (11th Cir. 1997) (citations omitted). Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to establish a legitimate, non-retaliatory reason for the adverse employment action. <u>E.E.O.C. v. Reichhold Chemicals, Inc.</u>, 988 F.2d 1564, 1572 (11th Cir. 1993). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the reasons are pretextual. <u>Id.</u>

Plaintiff stated during her deposition that FEC retaliated against her on two occasions: (1) FEC retaliated against her when she was terminated; and (2) FEC retaliated against her when it did not hire Plaintiff for a Direct Care Staff position.[9]

1. **Plaintiff's Termination**

Defendant argues that Plaintiff's claim for retaliation regarding her termination must fail because Plaintiff cannot establish a causal connection between her complaints of sexual

---

[9] Plaintiff's complaint does not clearly set forth these claims for retaliation. Moreover, as Defendant argues, there is a question whether Plaintiff is administratively barred from asserting these claims for retaliation. Plaintiff's first Charge of Discrimination, dated September 11, 2006, does not allege that FEC retaliated against her. Also, even if Plaintiff amended her complaint to include these claims, her Second Charge of Discrimination, dated November 30, 2007, only includes FEC's failure to hire her for the Direct Care Staff position as a basis for retaliation. Her termination is not included. The Court will consider both claims for retaliation because, as set forth herein, even assuming, *arguendo*, that these claims are properly pled and before the Court, Plaintiff has failed to establish a *prima facie* case for retaliation with respect to both claims.

harassment and her termination. Defendant also argues that it has a legitimate, non-discriminatory reason for Plaintiff's termination and Plaintiff cannot demonstrate that this reason is pretextual.

If Plaintiff cannot demonstrate direct evidence[10] of a causal connection between her complaints of sexual harassment and the adverse action, a "close temporal proximity" between the protected expression and the adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case. See Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir.2004). Accordingly, in a circumstantial case, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law. See Higdon, 393 F.3d at 1220 (citing Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001). In Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007), the Eleventh Circuit held a three-to four-month disparity between the statutorily protected expression and the adverse employment action insufficient to establish a claim for retaliation.

In this case, Plaintiff's most recent complaint to FEC was received on August 18, 2006. Plaintiff also filed her first Charge of Discrimination on September 11, 2006. Plaintiff was not terminated until early 2007.[11] Even assuming that Plaintiff's termination was as early as January 2007, this is still almost five months after her most recent complaint to FEC

---

[10] The record does not reflect any direct evidence of a causal connection between Plaintiff's complaints of sexual harassment and the adverse action.

[11] See Fn. 1 herein.

and nearly four months after Plaintiff filed her first Charge of Discrimination. Accordingly, Plaintiff cannot show circumstantial evidence of causation and has thus failed to establish a *prima facie* case for retaliation with respect to her termination.

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case for retaliation with respect to her termination, Defendant asserted a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant stated that the program that Plaintiff worked in was discontinued. Plaintiff failed to prove any evidence of pretext other than her opinion that she was terminated in retaliation for complaining to FEC and filing a Charge of Discrimination. Importantly, the Plaintiff's own evaluation and opinion is not a sufficient basis to establish pretext. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332-33 (11th Cir. 1998); Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997).

Accordingly, Defendant is entitled to summary judgment as a matter of law on Plaintiff's claim of retaliation for her termination.

### 2. Denial of Direct Care Staff Position

Defendant argues that Plaintiff's claim for retaliation regarding FEC's failure to hire her for the Direct Care Staff position must fail because Plaintiff cannot establish a causal connection between her first Charge of Discrimination filed on September 11, 2006 and FEC's failure to hire her for the Direct Care Staff position. Defendant also argues that it has a legitimate, non-discriminatory reason for its failure to hire Plaintiff for the Direct Care Staff position and Plaintiff cannot demonstrate that this reason is pretextual.

Plaintiff applied for the Direct Care Staff position on August 13, 2007. (Plaintiff's Deposition, Exhibit 8 thereto). Plaintiff claims that in September or October of 2007, FEC notified her that the position was no longer available. FEC's failure to hire Plaintiff for the Direct Care Staff position occurred approximately one year after Plaintiff filed the first Charge of Discrimination. As set forth herein, this length of time is not close enough in temporal proximity to meet the burden of causation. Accordingly, Plaintiff cannot show circumstantial evidence of causation and has thus failed to establish a *prima facie* case for retaliation with respect to her termination.

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case for retaliation with respect to the denial of the Direct Care Staff position, Defendant asserted a legitimate, non-discriminatory reason for its failure to hire Plaintiff for this position. Defendant stated that there were not enough sufficient clients to hire an additional staff member. Plaintiff failed to prove any evidence of pretext other than her opinion, which, as set forth herein, is insufficient to establish pretext.

Accordingly, Defendant is entitled to summary judgment as a matter of law on Plaintiff's claim that Defendant retaliated against her when it failed to hire her for the Direct Care Staff position.

### III. Conclusion.

For the reasons set forth above, it is hereby ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 16) is **GRANTED**.

2. The Clerk is directed to enter **JUDGMENT** in favor of Defendant The Family Enrichment Center, Inc. and against Plaintiff Sheron K. Smith.

3. The Clerk is also directed to terminate any pending motions and to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on May 26, 2009.

*/s/ James S. Moody, Jr.*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2008\08-cv-450.msj.frm